MARC A. PILOTIN
Regional Solicitor
LAURA C. BREMER (Cal. Bar No. 162900)
Counsel for ERISA
ANDREW KATZ (Cal. Bar No. 350024)
Senior Trial Attorney
Katz.Andrew.M@dol.gov
ADRIANA AHUMADA (Cal. Bar No. 274295)
Senior Trial Attorney
Ahumada.Adriana.E@dol.gov
UNITED STATES DEPARTMENT OF LABOR
90 7th Street, Suite 3-700
San Francisco, CA 94103-1516
Telephone: 415-625-7742
*Attorneys for Plaintiff Julie A. Su,
Acting United States Secretary of Labor*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| JULIE A. SU,<br>    Acting Secretary of Labor, U.S. Department of Labor,<br><br>                    Plaintiff,<br>v.<br><br>ROBERT B. PAMPLIN, JR., an individual; R.B. PAMPLIN CORPORATION, an Oregon Corporation; and R.B. PAMPLIN CORPORATION & SUBSIDIARIES PENSION PLAN, an employee benefit plan,<br><br>                    Defendants. | Case No. 3:24-cv-01548<br><br>**COMPLAINT FOR VIOLATIONS OF ERISA** |

# INTRODUCTION

1. Acting United States Secretary of Labor Julie A. Su ("Acting Secretary") brings this action under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), to restore losses and remedy other harms to the R.B. Pamplin Corporation & Subsidiaries Pension Plan (the "Pension Plan"); permanently bar Dr. Robert B. Pamplin, Jr. ("Dr. Pamplin") from serving as a fiduciary for the Pension Plan and any other ERISA-covered plan; to confirm the current acting independent fiduciary will continue to serve as the independent fiduciary for the Pension Plan; and order any other appropriate equitable relief to redress ERISA violations committed by Defendants, pursuant to ERISA sections 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109, 1132(a)(2) and (5).

2. The Pension Plan is a defined-benefit plan intended to provide retirement income for the employees of R.B. Pamplin Corporation and its subsidiaries. Dr. Pamplin is Board Chairman, President, Secretary, and Chief Executive Officer of R.B. Pamplin Corporation, which is the Pension Plan's Sponsor and Plan Administrator. He was also the Pension Plan's Trustee, as appointed by members of the Board of Directors of the R.B. Pamplin Corporation, until he resigned on September 6, 2023.

3. Within the six years preceding the filing of this Complaint, Dr. Pamplin and the R.B. Pamplin Corporation engaged in nearly a hundred transactions involving over twenty-five real properties by selling or contributing real property to the Pension Plan and leasing them back to R.B. Pamplin Corporation or its affiliates. In total, Dr. Pamplin and R.B. Pamplin Corporation caused the Pension Plan to acquire and hold over 50 percent of its assets as employer real property. In doing so, Dr. Pamplin and the R.B. Pamplin Corporation breached their fiduciary duties to Pension Plan participants, including by causing the Pension Plan to acquire and hold

employer real property in violation of ERISA, engaging in transactions prohibited by ERISA, and violating their duties of loyalty, prudence, diversification, and to follow plan documents in violation of ERISA.

4. Dr. Pamplin and R.B. Pamplin Corporation were aware that they were violating ERISA by causing the Pension Plan to acquire over 10 percent of its assets as employer real property by no later than November 2019. A memorandum to Dr. Pamplin dated on or about November 12, 2019 from five employees of Mount Vernon Mills, Inc., an R.B. Pamplin Corporation subsidiary, indicated that Dr. Pamplin had caused the Pension Plan to acquire property in excess of 10 percent of the assets of the Pension Plan, against their prior advice.

5. Furthermore, R.B. Pamplin Corporation is liable for the breaches of its co-fiduciary Dr. Pamplin. By failing to monitor Trustee Dr. Pamplin, R.B. Pamplin Corporation enabled Dr. Pamplin's fiduciary breaches. R.B. Pamplin Corporation is also liable as a co-fiduciary because it participated in numerous transfers of its real property to the Pension Plan, knowing that these transfers violated ERISA.

## JURISDICTION AND VENUE

6. This action arises under ERISA and is brought by the Acting Secretary to obtain relief under ERISA sections 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109, 1132(a)(2) and (5), to redress violations and enforce the provisions of Title I of ERISA.

7. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and ERISA section 502(e)(1), 29 U.S.C. § 1132(e)(1).

8. Pursuant to ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2), venue for this action lies in the District of Oregon because the Pension Plan was administered in this District; Defendant R.B. Pamplin Corporation is a corporation with its principal place of business in this

District; Defendant Dr. Pamplin resides and can be found in Clackamas County, Oregon; and violations of ERISA occurred in this District.

9. Further, pursuant to Local Rule 3-2(b), venue lies in the Portland Division because a substantial part of the events or omissions giving rise to this lawsuit occurred in this Division.

## PARTIES

10. The R.B. Pamplin Corporation & Subsidiaries Pension Plan is an employee benefit plan set up to provide retirement income within the meaning of ERISA section 3(3), 29 U.S.C. § 1002(3) and is subject to the provisions of Title I of ERISA pursuant to ERISA section 4(a), 29 U.S.C. § 1003(a). The Pension Plan is a defined benefit plan pursuant to ERISA section 3(35), 29 U.S.C. § 1002(35). The Pension Plan is named as a Defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to ensure that complete relief can be granted.

11. At all relevant times, Defendant R.B. Pamplin Corporation was a Delaware corporation registered to do business in Oregon. Until 2023, its principal place of business was in Portland, Oregon, after which it moved to Lake Oswego, Oregon. It is the parent of at least a dozen subsidiaries that, among other things, manufacture and distribute food, wine, and textiles as well as run retail shops and furnish news and entertainment. R.B. Pamplin Corporation employs employees covered by the Pension Plan or owns subsidiaries that employ such employees. Per the Pension Plan's governing documents, R.B. Pamplin Corporation is the Pension Plan Sponsor, Pension Plan Administrator, and a Named Fiduciary of the Pension Plan. The Pension Plan's governing documents give R.B. Pamplin Corporation the power to remove the Trustee and holds it "responsible for evaluating and monitoring the investment performance of the Trustee and any investment managers." The R.B. Pamplin Corporation is therefore a

fiduciary to the Pension Plan as defined in ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A); a party in interest to the Pension Plan within the meaning of ERISA sections 3(14)(A) to (C), (E), and (G), 29 U.S.C. §§ 1002(14)(A) to (C), (E), (G); and an "employer" as defined in ERISA section 3(5), 29 U.S.C. § 1002(5).

12. R.B. Pamplin Corporation has the following relevant subsidiaries (also referred herein as affiliates): Columbia Empire Farms, Inc., Ross Island Sand & Gravel, Co., Mount Vernon Mills, Inc., Oregon Publication Corporation, Inc., Smith and Waters, Inc., and LeCep II, Inc. These subsidiaries are employers of employees that are Participants in the Pension Plan and therefore are parties in interest to the Pension Plan under ERISA section 3(14)(C) and (G), 29 U.S.C. § 1002(14)(C), (G). These subsidiaries are also "employer[s]" as defined under ERISA section 3(5), 29 U.S.C. § 1002(5). Other R.B. Pamplin Corporation subsidiaries are also the employers of the employees that are Participants in the Pension Plan and therefore are also parties in interest to the Pension Plan under ERISA section 3(14)(C) and (G), 29 U.S.C. § 1002(14)(C) and (G), and "employer[s]" as defined under ERISA section 3(5), 29 U.S.C. § 1002(5).

13. At all relevant times, Dr. Pamplin was the Board Chairman, President, Secretary, and Chief Executive Officer of R.B. Pamplin Corporation. Dr. Pamplin controlled all the R.B. Pamplin Corporation's stock because he owns R.B. Pamplin Corporation stock; he serves as the trustee for the R.B. Pamplin, Jr. Trust, which holds R.B. Pamplin Corporation stock for the benefit of Marilyn Pamplin, Anne Pamplin-Evenson, and Amy Pamplin North; and he manages the Pamplin Foundation and the Pamplin Christian Foundation, which also hold R.B. Pamplin Corporation stock. Dr. Pamplin therefore controls R.B. Pamplin Corporation and its subsidiaries, as listed *infra* in Paragraph 12 of this Complaint, and is therefore an employer under ERISA

section 3(5), 29 U.S.C. § 1002(5). Per the Pension Plan's governing documents, he was the Pension Plan's Trustee and a Named Fiduciary of the Pension Plan until he resigned on October September 6, 2023. The Pension Plan document gives the Trustee discretionary authority to invest the assets of the Pension Plan, and he exercised control over the management of the Pension Plan and the disposition of its assets. He was therefore a fiduciary of the Pension Plan as defined by ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), and a party in interest to the Pension Plan as defined by ERISA section 3(14)(A), (C), (E), and (H), 29 U.S.C. § 1002(14)(A), (C), (E), and (H).

## FACTUAL BACKGROUND

**I.      Over the past six years, Dr. Pamplin and the R.B. Pamplin Corporation caused the Pension Plan to acquire numerous real estate properties from R.B. Pamplin Corporation or its subsidiaries, then lease them back to the companies.**

14.     Within the six years preceding the date of this lawsuit, Dr. Pamplin and R.B. Pamplin Corporation caused the Pension Plan to acquire real property owned by R.B. Pamplin Corporation or its subsidiaries and to lease back such property to R.B. Pamplin Corporation or its subsidiaries, rendering such property "employer real property" under ERISA section 407(d)(2), 29 U.S.C. § 1107(d)(2). These acquisitions occurred in various ways.

15.     As the Pension Plan's Trustee, Dr. Pamplin selected all the Pension Plan's investments, including the real properties that the Pension Plan acquired. In some instances, the Pension Plan purchased real properties, or fractional interests therein, from R.B. Pamplin Corporation or one of its subsidiaries. In total, the Pension Plan acquired interests in over two dozen real properties from R.B. Pamplin Corporation or its subsidiaries within the last six years.

16.     For example, in or around February 2019, the Pension Plan purchased two real properties from Ross Island Sand & Gravel Co., an R.B. Pamplin Corporation subsidiary: the

Tait Parcel in Portland, Oregon and the Albina parcel in Portland, Oregon.

17.     The Pension Plan also acquired properties from R.B. Pamplin Corporation that were originally owned by a subsidiary. For instance, the Pension Plan purchased a portion of the Carlson Konkler parcel in Madras, Oregon over approximately four transactions from R.B. Pamplin Corporation starting around June 2022 and ending around January 2023. Up until around the time of the sales, R.B. Pamplin Corporation subsidiary Columbia Empire Farms had owned the Carlson Konkler parcel.

18.     In other instances, to meet the minimum funding requirements for defined benefit plans under ERISA, the Internal Revenue Code, and the Pension Plan's governing documents, Dr. Pamplin and R.B. Pamplin Corporation contributed real properties or fractional interests in real properties in lieu of cash contributions to the Pension Plan. As an example, in lieu of making cash contributions, the R.B. Pamplin Corporation contributed a majority interest in Ross Island to the Pension Plan in December 2020. Ross Island is an island in the Willamette River located within Portland where Ross Island Sand and Gravel, Co. previously mined gravel and processed concrete. Ross Island Sand and Gravel, Co. currently runs dredging operations from Ross Island and uses it to store and maintain equipment. As another example, at the behest of Dr. Pamplin, R.B. Pamplin Corporation contributed a portion of the Carlson Konkler parcel to the Pension Plan around March 2022.

19.     The real properties that the Pension Plan acquired from R.B. Pamplin Corporation or its subsidiaries did not constitute qualifying employer real property under ERISA section 407(d)(4), 29 U.S.C. § 1107(d)(4). First, many of the properties transferred to the Pension Plan were suitable only for one use without excessive cost. For example, approximately nine of the properties transferred to Pension Plan were rangeland that could not readily be used

for other purposes without excessive cost. Similarly, at least two of the properties—Lake Oswego and Alto Land—were unimproved properties not suitable for more than one use without excessive expenditures.

20. Second, many of the real properties were geographically concentrated in Oregon. Of the approximately 27 real properties transferred in whole or in part to the Pension Plan, almost all of them were in Oregon; only approximately five real properties were in other states. Currently, the Pension Plan owns interests in 20 properties in Oregon and one property in Georgia.

21. Third, the Pension Plan's acquisition of these employer real properties constituted imprudent investments for the Plan. Many of the properties were saddled with unpaid property taxes, and some were saddled with liens. At least three of the properties—Albina, Tait, and Ross Island—require or required substantial and costly environmental remediation. Finally, the lease backs contained terms favoring R.B. Pamplin Corporation and its affiliates and disfavoring the Pension Plan, such as omitting provisions for penalties for late lease payments.

22. The Pension Plan sold approximately seven of the real properties that it acquired from the R.B. Pamplin Corporation or one of its subsidiaries, and at least two of those properties were sold at a loss. Currently, the Pension Plan holds interests in approximately 21 employer real properties.

23. As of close of business on May 6, 2024, the Pension Plan held over 50 percent of its total assets in employer real property.

24. ERISA section 407(a)(2) prohibits defined benefit plans from acquiring employer real property, if immediately after the acquisition, the aggregate fair market value of the employer real property exceeds 10 percent of the plan's assets. Despite this prohibition, the

Pension Plan began acquiring property that first caused it to exceed this 10 percent threshold between five and six years ago and since then has continued to acquire additional properties that increased the percentage of the Pension Plan's assets held in employer real property.

25. Because of these transactions and the Pension Plan's resulting asset mix, the Pension Plan received a considerably lower return on investments than it would have if the Pension Plan's assets had been invested in prudent investments, such as a combination of equities and other securities. The Pension Plan's investments in the employer real properties contributed to the Plan being underfunded and will hurt the Pension Plan's ability to pay benefits to Pension Plan participants as promised.

II. **A prudent person would not have engaged in the process that Dr. Pamplin and the R.B. Pamplin Corporation used when it caused the Pension Plan to acquire employer real estate owned by R.B. Pamplin Corporation or its subsidiaries.**

26. The process that Dr. Pamplin and R.B. Pamplin Corporation used to transfer the real properties to the Pension Plan was highly deficient and imprudent.

27. For example, before causing the Pension Plan to buy or accept contributions of properties from R.B. Pamplin Corporation or its affiliates, Dr. Pamplin would hire an appraiser to value the property. However, Dr. Pamplin did not undertake a good faith investigation of the merits of the transactions, conduct good faith negotiations over the transactions price or material terms, thoroughly review and analyze any appraisal reports on which he relied, or always use current appraisals when he determined the price of the transactions. Nor did Dr. Pamplin consult with the Pension Plan's investment advisor or others about whether a property was a good investment for the Pension Plan before transferring it.

28. Dr. Pamplin did not ensure that the transactions were effectuated using customary documentation for real estate transactions, such as sales agreements and settlement statements.

29. Dr. Pamplin and R.B. Pamplin Corporation caused the Pension Plan to acquire real properties with unpaid property taxes or liens without accounting for these liabilities by reducing the purchase price. For example, when the Pension Plan acquired the Ross Island parcel without a purchase price reduction, it appears to have at least one judgment lien and hundreds of thousands of dollars in unpaid taxes.

30. Once title was allegedly transferred, Dr. Pamplin and R.B. Pamplin Corporation often failed to properly record the Pension Plan's ownership in governmental records. For example, it appears that the Pension Plan's ownership of Ross Island was never fully recorded in governmental records. As Ross Island Sand & Gravel, Co. is still listed as a part owner of Ross Island, other parties have been able to record judgment liens unrelated to the Pension Plan against Ross Island, even after the Pension Plan owned Ross Island outright.

31. Dr. Pamplin and R.B. Pamplin Corporation also failed to ensure that the deeds to several of the real properties accurately described the interest transferred to the Pension Plan. For instance, the deeds transferring fractional interests of the Johnson and Johnson II parcels contain the same descriptions even though they are supposedly two different properties. In addition, the deeds' descriptions omit small parcels from the original description of the Johnson property, which was originally appraised as one rather than two properties. It is therefore unclear what the Pension Plan purchased.

## III.   Dr. Pamplin and the R.B. Pamplin Corporation caused the Pension Plan to enter into lease agreements with highly favorable terms to the R.B. Pamplin Corporation and its subsidiaries to the Pension Plan's detriment.

32. Dr. Pamplin and R.B. Pamplin Corporation caused the Pension Plan to sign lease agreements to lease back the employer real properties with terms highly favorable to R.B. Pamplin Corporation and its subsidiaries. For example, these lease agreements contain no

penalties for late lease payments or provisions allowing for the Pension Plan to remove the tenant, enabling Dr. Pamplin and R.B. Pamplin Corporation to pay rent late or not at all. In fact, Dr. Pamplin and R.B. Pamplin Corporation failed to pay the leases on most of the properties since January 2023. To date, R.B. Pamplin Corporation owes the Pension Plan over $2 million in late lease payments. As another example, the lease agreements allowed the R.B. Pamplin Corporation to repurchase the property without placing it on the market to determine a fair market price.

### IV. Dr. Pamplin and the R.B. Pamplin Corporation caused the Pension Plan to purchase employer properties requiring substantial environmental remediation.

33. Dr. Pamplin and R.B. Pamplin Corporation caused the Pension Plan to acquire at least three employer real properties—Albina, Tait, and Ross Island—that will require or required substantial environmental remediation. For example, extensive work must still be done to restore Ross Island's lagoon, which Ross Island Sand & Gravel, Co. estimated will cost over $6 million in a filing with Oregon's Department of State Lands. The purchase price of these three employer real properties did not account for the remediation that needed to be performed. A prudent fiduciary to the Pension Plan would have considered the environmental remediation required and accounted for it when entering into transactions transferring such property to the Pension Plan.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Against Defendants Dr. Pamplin and R.B. Pamplin Corporation for Acquiring or Holding Any Employer Real Property that is Not Qualifying Employer Real Property in violation of ERISA §§ 407(a) and 406(a)(1)(E) and (a)(2))**

34. Paragraphs 1 through 33 above are realleged and incorporated herein by reference.

35. Dr. Pamplin and R.B. Pamplin Corporation violated ERISA section 406(a)(1)(E),

29 U.S.C. § 1106(a)(1)(E), by causing the Pension Plan to engage in transactions acquiring employer real property that they knew or should have known violated of ERISA section 407(a), 29 U.S.C. § 1107(a).

36. As discussed throughout this complaint, many of the transactions that Dr. Pamplin and R.B. Pamplin Corporation caused the Pension Plan to enter into violated ERISA section 407(a), which prohibits the Pension Plan from acquiring or holding employer real property that is not "qualifying employer real property," as defined in ERISA section 407(d)(4), 29 U.S.C. § 1107(d)(4).

37. The real property that Dr. Pamplin and R.B. Pamplin Corporation caused the Pension Plan to acquire and hold was "employer real property" under ERISA section 407(d)(2), 29 U.S.C. § 1107(d)(2). The real property Dr. Pamplin and R.B. Pamplin Corporation transferred to the Pension Plan was owned (directly or indirectly) by R.B. Pamplin Corporation or its affiliates before it was sold to the Pension Plan and leased back to R.B. Pamplin Corporation or its affiliates, whose employees participated in the Pension Plan. R.B. Pamplin Corporation, Ross Island Sand & Gravel Co., Mount Vernon Mills, Inc., Columbia Empire Farms, Inc., Smith & Waters, Inc., and LeCep II, Inc. are "employer[s]" as defined in in ERISA section 3(5), 29 U.S.C. § 1002(5). The approximately 27 properties acquired in whole or in part by the Pension Plan are employer real property pursuant to ERISA section 407(d)(2), 29 U.S.C. § 1107(d)(2).

38. Many of the properties that the Pension Plan acquired from employer R.B. Pamplin Corporation and its affiliates, such as those discussed above, were not "qualifying employer real property" because the properties were not geographically dispersed as they are mostly in Oregon. As discussed throughout this complaint, many of the employer real properties were also not qualifying employer real property because they were not suitable for more than one

use or adaptable for more than one use without excessive costs. Finally, as discussed throughout this complaint, many of the employer real properties acquired by the Pension Plan were also not qualifying employer real property because they were imprudent investments in violation of ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

## SECOND CLAIM FOR RELIEF
**(Against Defendants Dr. Pamplin. and R.B. Pamplin Corporation for Acquiring More Than 10 percent of Plan Assets as Employer Real Property in violation of ERISA §§ 407(a) and 406(a)(1)(E))**

39. Paragraphs 1 through 38 above are realleged and incorporated herein by reference.

40. Within the past six years, Dr. Pamplin and R.B. Pamplin Corporation violated ERISA sections 406(a)(1)(E) and 407(a), 29 U.S.C. §§ 1106(a)(1)(E) and 1107(a), by causing the Pension Plan to acquire employer real property that resulted in it holding more than 10 percent of the fair market value of the Pension Plan's assets as employer real property. Since then, Dr. Pamplin and R.B. Pamplin Corporation have continued to violate ERISA sections 406(a)(1)(E) and 407(a), 29 U.S.C. §§ 1106(a)(1)(E) and 1107(a), by acquiring employer real property until around March 2023. Dr. Pamplin and R.B. Pamplin Corporation ultimately caused the Pension Plan to acquire employer real property worth over 50 percent of fair market value of its assets.

## THIRD CLAIM FOR RELIEF
**(Against Defendants Dr. Pamplin and R.B. Pamplin Corporation for Causing a Sale or Lease of Property Between the Pension Plan and a Party In Interest in violation of ERISA § 406(a)(1)(A))**

41. Paragraphs 1 through 40 above are realleged and incorporated herein by reference.

42. Dr. Pamplin and R.B. Pamplin Corporation caused the Pension Plan to engage in

numerous prohibited transactions that they knew or should have known constituted the sale, exchange, or leasing of any property between the Pension Plan and parties in interest in violation of ERISA section 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A). The parties in interest involved include R.B. Pamplin Corporation and various of its affiliates, such as Columbia Empire Farms, Inc., Ross Island Sand & Gravel, Co., Mount Vernon Mills, Inc., Oregon Publication Corporation, Inc., Smith and Waters, Inc., and LeCep II, Inc.

43. At least some of the properties contributed to the Pension Plan are also sales under ERISA section 406(c), 29 U.S.C. § 1106(c), because they were encumbered by liens or unpaid property taxes. For example, Dr. Pamplin and R.B. Pamplin Corporation caused Ross Island Sand & Gravel, Co. to contribute to the Pension Plan a majority interest in Ross Island, which was then encumbered with at least one lien and had outstanding property taxes. As the lien and property taxes are attached to the Ross Island parcel, the Pension Plan assumed these liabilities when Dr. Pamplin and R.B. Pamplin Corporation transferred the Ross Island Parcel to the Pension Plan. Other properties the Dr. Pamplin caused R.B. Pamplin Corporation to contribute to the Pension Plan to satisfy its funding requirements were "sales or exchanges" under ERISA section 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A); 29 C.F.R. § 2509.94-3.

44. After transferring the real properties to the Pension Plan, Dr. Pamplin and R.B. Pamplin Corporation again violated ERISA section 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), by causing the Pension Plan to enter into lease agreements with R.B. Pamplin Corporation and other parties in interest, such as those discussed throughout this complaint. The leases that the Pension Plan entered into with R.B. Pamplin Corporation and its affiliates to lease back the employer real properties contained many provisions that were highly unfavorable to the Pension Plan and failed to contain provisions that would protect the Pension Plan's interests. For example, as discussed

above, the leases provided no protections to the Pension Plan if the tenants paid late, failed to pay, or needed to be evicted. The lease provisions also gave R.B. Pamplin Corporation the ability to buy the leased property without being put on the market to determine the fair market value.

**FOURTH CLAIM FOR RELIEF**
**(Against Defendants Dr. Pamplin and R.B. Pamplin Corporation for causing Pension Plan assets to be used by or for the benefit of a party in interest in violation ERISA § 406(a)(1)(D))**

45. Paragraphs 1 through 44 above are realleged and incorporated herein by reference.

46. Dr. Pamplin and R.B. Pamplin Corporation violated ERISA section 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D) by causing the Pension Plan to engage in multiple transactions that they knew or should have known constituted direct or indirect transfers of the Pension Plan's assets to, or use of the Pension Plan's assets by or for the benefit of, parties in interest, such as those discussed throughout this complaint. For example, party in interest R.B. Pamplin Corporation used many of the employer real properties acquired by the Pension Plan to operate its businesses and benefited from that use by not paying any rent for the use of those properties despite signing lease agreements with the Pension Plan.

**FIFTH CLAIM FOR RELIEF**
**(Against Defendants Dr. Pamplin and R.B. Pamplin Corporation for Causing the Pension Plan to Transact With Parties Whose Interests Are Adverse to the Pension Plan in violation of ERISA § 406(b)(2) and Dealing with Plan Assets in Their Own Interests in violation of ERISA § 406(b)(1))**

47. Paragraphs 1 through 46 above are realleged and incorporated herein by reference.

48. Despite being fiduciaries to the Pension Plan, Dr. Pamplin and R.B. Pamplin Corporation violated ERISA section 406(b)(2), 29 U.S.C. § 1106(b)(2), by selling and contributing employer real property to the Pension Plan on terms that adversely impacted the

Pension Plan and were highly favorable to R.B. Pamplin Corporation and, by extension, R.B. Pamplin Corporation's primary owner Dr. Pamplin. These sales and contributions often saddled the Pension Plan with property tax expenses that R.B. Pamplin Corporation and its subsidiaries had failed to pay before transferring the properties to the Pension Plan, with liens attached to the properties before they were transferred to the Pension Plan that reduced their value, and with leases containing terms highly favorable to the tenants R.B. Pamplin Corporation and its subsidiaries rather than to the Pension Plan. The purchase prices for these properties were not reduced to account for these liens. The Pension Plan's interests in these real property transfers were adverse to Dr. Pamplin and R.B. Pamplin Corporation because the Pension Plan had an interest in not accepting these liabilities, while Dr. Pamplin and R.B. Pamplin Corporation had a contrary interest in transferring these liabilities onto the Pension Plan.

49. As discussed throughout this complaint, Dr. Pamplin and R.B. Pamplin Corporation violated ERISA section 406(b)(1), 29 U.S.C. § 1106(b)(1), by repeatedly dealing with Pension Plan assets in their own interests and by using the Pension Plan assets for their benefit, such as using the employer real properties to conduct business without paying rent, rather than in the Pension Plan's best interests.

## SIXTH CLAIM FOR RELIEF
**(Against Defendants Dr. Pamplin and R.B. Pamplin Corporation for Breaching Their Fiduciary Duties in Violation of ERISA § 404(a)(1)(A), (B), (C), and (D))**

50. Paragraphs 1 through 49 above are realleged and incorporated herein by reference.

51. Dr. Pamplin and R.B. Pamplin Corporation breached their fiduciary duty of loyalty in violation of ERISA section 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) by failing to act solely in the interest of Pension Plan participants and for the exclusive purpose of providing

benefits and defraying reasonable Pension Plan expenses. To the contrary, Dr. Pamplin and R.B. Pamplin Corporation caused the Pension Plan to buy property that they and the affiliates of R.B. Pamplin Corporation owned for tens of millions of dollars, caused the Pension Plan to acquire properties from themselves and affiliates of R.B. Pamplin Corporation that were encumbered with liens and environmental liabilities, and caused the Pension Plan to lease back the properties to R.B. Pamplin Corporation and its affiliates for terms unfavorable to the Pension Plan.

52. Dr. Pamplin and R.B. Pamplin Corporation breached their duty of prudence in violation of ERISA section 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(b), by imprudently causing the Pension Plan to invest heavily in employer real properties and lease the properties back to R.B. Pamplin Corporation and its affiliates. Such transactions were imprudent, for example, because the properties Dr. Pamplin and R.B. Pamplin Corporation transferred to the Pension Plan were often encumbered with liens, unpaid property taxes, and environmental liabilities. In addition, these investments in employer real property were also imprudent because they provided the Pension Plan with poor or negative returns on investment compared to what the Pension Plan would have earned had its assets been invested more prudently, and they were illiquid compared to other investments.

53. Dr. Pamplin. and R.B. Pamplin Corporation breached their duty of diversification in violation of ERISA section 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C), by causing the Pension Plan to invest in an undiversified portfolio. Through the series of real property transactions that started approximately six years ago, Dr. Pamplin and R.B. Pamplin Corporation caused the Pension Plan to increasingly invest in an undiversified portfolio. The Pension Plan currently holds over 50 percent of its portfolio in commercial real estate in Oregon. Much of that commercial real estate is concentrated in agricultural real estate, such as rangeland and irrigated

cropland. Furthermore, the Pension Plan is further exposed to a lack of diversification because its real property has been leased by R.B. Pamplin Corporation and its affiliates.

54. Finally, Dr. Pamplin. and R.B. Pamplin Corporation violated ERISA section 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), by failing to comply with the Pension Plan's governing documents, which prohibited the Trustee from engaging in transactions that violate ERISA sections 406(a) and (b) and 407, 29 U.S.C. §§ 1106(a) and (b), 1107. As detailed throughout this complaint, Dr. Pamplin and R.B. Pamplin Corporation breached ERISA sections 406(a) and (b) and 407, 29 U.S.C. §§ 1106(a) and (b), 1107, repeatedly.

### SEVENTH CLAIM FOR RELIEF
(Against Defendant R.B. Pamplin Corporation for Breaching Its Fiduciary Duties in Violation of ERISA § 404(a)(1)(A), (B), and (D))

55. Paragraphs 1 through 54 above are realleged and incorporated herein by reference.

56. The Pension Plan's governing documents required the R.B. Pamplin Corporation to evaluate and monitor the Pension Plan's investments and to monitor the performance of the Trustee and any investment managers. The Pension Plan's governing documents also provided R.B. Pamplin Corporation with the power to remove the Trustee at any time, increase or decrease the number of Trustees, and appoint additional Trustees. Nevertheless, R.B. Pamplin Corporation failed to monitor the Pension Plan's sole Trustee, Dr. Pamplin, and failed to remove Dr. Pamplin as Trustee. For the reasons discussed above, R.B. Pamplin Corporation had a duty to monitor Dr. Pamplin under ERISA section 404(a)(1)(A), (B), and (D), 29 U.S.C. § 1104(a)(1)(A), (B), and (D), and breached that duty.

**EIGHTH CLAIM FOR RELIEF**
**(Against Defendant R.B. Pamplin Corporation for Breaches as a Co-Fiduciary of Dr. Pamplin in Violation of ERISA § 405(a)(1), (2), and (3))**

57.     Paragraphs 1 through 56 above are realleged and incorporated herein by reference.

58.     As provided above, R.B. Pamplin Corporation is liable as a co-fiduciary for Dr. Pamplin's breaches under ERISA section 405(a)(1), 29 U.S.C. § 1105(a)(1). R.B. Pamplin Corporation was a fiduciary to the Pension Plan, yet it knowingly participated in the transactions between itself and the Pension Plan and knew that these transactions violated ERISA. It is jointly and severally liable for Dr. Pamplin's ERISA violations under ERISA section 405(a)(1), 29 U.S.C. § 1105(a)(1). Further, because it knew that Dr. Pamplin had breached his fiduciary duties but failed to make any effort to remedy his breaches, it is jointly and severally liable for his ERISA violations under ERISA section 405(a)(3), 29 U.S.C. § 1105(a)(3).

59.     R.B. Pamplin Corporation is also jointly and severally liable for Dr. Pamplin's ERISA violations under ERISA section 405(a)(2), 29 U.S.C. § 1105(a)(2), because it failed to monitor Dr. Pamplin, thereby enabling him (1) to commit breaches of his fiduciary duties to the Pension Plan and (2) to cause the Pension Plan to engage in various prohibited transactions involving the purchase or receipt of real property.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays that this Court, pursuant to ERISA sections 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109, 1132(a)(2) and (5):

A.      Require Dr. Pamplin and R.B. Pamplin Corporation to restore all losses the Pension Plan has suffered resulting from their fiduciary breaches, plus interest;

B.      As necessary, require rescission of any prohibited transactions, including those

that cause the Pension Plan to violate ERISA section 407(a), 29 U.S.C. § 1107(a);

    C.    Offset any benefits to which Dr. Pamplin is entitled under the Pension Plan against what he is ordered or required to pay pursuant to any judgment against him, as permitted under ERISA section 206(d)(4), 29 U.S.C. § 1056(d)(4);

    D.    Permanently bar Dr. Pamplin from serving as a fiduciary of the Pension Plan or any other ERISA-covered plan;

    E.    Permanently bar R.B. Pamplin Corporation and Dr. Pamplin from violating ERISA;

    F.    Confirm the appointment of independent fiduciary with discretionary authority to administer the Pension Plan, whose reasonable costs and fees would be paid for by Dr. Pamplin and R.B. Pamplin Corporation; and,

    G.    Provide any other relief as may be just and equitable.

Date: September 12, 2024                      Respectfully submitted,

                                                    SEEMA NANDA
                                                    Solicitor of Labor

                                                    MARC. A PILOTIN
                                                    Regional Solicitor

                                                    LAURA C. BREMER
                                                    Counsel for ERISA

                                                    ANDREW KATZ
                                                    Senior Trial Attorney

                                                    */s/Adriana Ahumada*
                                                    ADRIANA AHUMADA
                                                    Senior Trial Attorney
                                                    Office of the Solicitor
                                                    UNITED STATES DEPARTMENT OF LABOR
                                                    *Attorneys for Julie A. Su, United States Acting Secretary of Labor*